UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN V. MCGEE, | ) | CASE NO. 5:11CV2751 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS L. ARMSTRONG, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | **(Including Order of Reference)** |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is plaintiff's motion for temporary restraining order and preliminary injunction. (Doc. No. 7.) The Court conducted an initial telephone conference with counsel[1] on December 21, 2011 for purposes of discussing the motion for TRO. Following that conference, the Court indicated that it would take the motion for TRO under advisement forthwith. For the reasons discussed herein, to the extent the motion seeks a TRO, it is **DENIED**.

## I. BACKGROUND

On December 20, 2011, plaintiff filed a complaint against defendant Summit County Developmental Disabilities Board ("the Board") and two of its "manager[s] in the chain of command," Thomas Armstrong and Lisa Kamlowsky. The complaint sets forth federal causes of action for discrimination and retaliation under Title VII, the Civil Rights Act (42 U.S.C. § 1983), and the Uniformed Services Employment and Reemployment Rights Act ("USERRA")

---

[1] Attorney Michael McGee participated on behalf of plaintiff and Attorney Dave Kessler, who has not yet filed a notice of appearance, participated on behalf of defendants. The proceedings were not recorded.

(38 U.S.C. § 4301, *et seq.*), as well as a state law civil rights claim, a breach of contract claim, and a claim of violation of public policy.

Plaintiff is employed by the Board as Director of Marketing, Public Relations and Specialty Businesses pursuant to the terms of an Employment Agreement ("the Agreement"). (Compl. ¶¶ 20, 28.) He alleges that, because of his status as an active member of the Ohio Army National Guard, which sometimes requires his absence pursuant to military orders of deployment, he has been selectively disciplined, demoted, retaliated against, and treated differently than his non-military peers. (*Id*. ¶ 22.)

Plaintiff further alleges that the Agreement includes provisions under which he is to be paid during all required military duty. He alleges that he is entitled to "[f]ull pay for the first 31 days of military leave (through Feb. 2, 2012 in this case when 31 days of leave would be exhausted); and Military Pay Differential of $215.90 per day, (in this case beginning on Feb. 3 and for each working day while absent on orders, through March 20, 2012)." (Compl. ¶ 28.) Plaintiff has been summoned to military duty and will be required to muster out of state with the Army on January 9, 2012. (*Id*. ¶ 29.) On November 11, 2011, he requested the contractual allowances for military leave from his supervisor, defendant Armstrong. (*Id*.) On December 8, 2011, he was provided a response from the Board's legal counsel and Assistant Superintendent, defendant Kamlowsky, which indicated that the Board would not comply with the Employment Agreement as it had in past years and would not pay plaintiff his differential pay during his military duty. (*Id*.)

Along with his complaint, plaintiff filed the instant motion for TRO and preliminary injunction aimed specifically at enjoining defendants from failing to pay him

appropriately under the terms of the Agreement during his active duty deployment. He does not seek immediate injunctive relief with respect to any other aspect of his complaint.

## II. DISCUSSION

**A.     Legal Standard**

In considering whether to grant injunctive relief under Fed. R. Civ. P. 65, the Court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distributing Company v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

"[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo. *Reid v. Hood*, No. 1:10CV2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of Cal. v. Fox,* 434 U.S. 1345, 1347 n. 2 (1977)). "If the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined, then there is cause to preserve the status quo." *Id*. (citing *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

**B.     Analysis**

    **1.     Likelihood of Success on the Merits**

Plaintiff relies on the terms of the Agreement with the Board, as well as alleged past practice, for his assertion that he is likely to succeed on the merits. He argues that the Agreement provides for 31 days of full pay for the first 31 days of military leave, plus "differential pay" for all additional days of military leave. He asserts that, in the past, the Board has complied with these requirements. However, when he told the Board of his upcoming deployment, he was advised by Memo dated December 19, 2011 (*see* Doc. No. 7-2), that he would be paid for only 22 days of military leave and that his differential pay would be calculated and paid "as soon as practicable" after receipt by the Human Resources Department of his earnings statement for each time he is paid by the military. Plaintiff asserts that the Agreement requires that he be paid every two weeks and, since he is able to tell the Board now what his military pay will be, he should not be required to first supply copies of his military earnings statements in order to receive his differential pay.

According to plaintiff, the Agreement under which he is employed is attached to the complaint. *See* Doc. No. 1-1. It contains the following provisions which are relevant to whether plaintiff is likely to succeed on the merits:

    IV.     Compensation

        \* \* \*

        B.     Other Compensation - Fringe Benefits (A**)**

    \* \* \*

        5.     <u>Military Leave</u> -- The Employee shall be entitled to thirty-one (31) days of military leave. In the event the Employee is called or ordered to the uniformed services for longer than one month, Employee is entitled, during the period designated in the order, to a

                leave of absence and to be paid, during each monthly pay period of that leave of absence, the difference between the Employee's gross monthly salary and the sum of the Employee's gross uniformed pay and allowances received that month.
        \* \* \*

XI.    General Provisions
        \* \* \*

    B.    <u>Application of the Ohio Revised Code</u>: Notwithstanding the foregoing provisions of this contract, the parties agree to be bound by the Ohio Revised Code, as hereinafter amended, including but not limited to the provisions of Chapter 5126. A copy of the relevant code sections is available at the Board administrative office for the convenience of the Employee.
        \* \* \*

    E.    <u>Savings Clause</u>: If any portion of this contract is deemed to be illegal due to conflict with state or federal law, the remainder of the contract shall remain in full force and effect.

The reference in the Agreement to Ohio Rev. Code Chapter 5126 is to the section of Ohio's statutory law governing the services provided by County Boards of Development Disabilities. Although not specifically mentioned in the Agreement, a section of the Ohio Revised Code dealing with "Organized Militia" also applies. It provides in relevant part as follows:

(A)    (1) Permanent public employees who are members of the Ohio organized militia or members of other reserve components of the armed forces of the United States, including the Ohio national guard, are entitled to a leave of absence from their respective positions without loss of pay for the time they are performing service in the uniformed services, for periods of up to one month, for each calendar year in which they are performing service in the uniformed services.

(2) As used in this section:

\* \* \*
(b) "Month" means twenty-two eight-hour work days or one hundred seventy-six hours, or for a public safety employee, seventeen twenty-four-hour days or four hundred eight hours, within one calendar year.

\* \* \*

5

> (B) Except as otherwise provided in division (D) of this section, any permanent public employee who is employed by a political subdivision, who is entitled to the leave provided under division (A) of this section, and who is called or ordered to the uniformed services for longer than a month, for each calendar year in which the employee performed service in the uniformed services, because of an executive order issued by the president of the United States, because of an act of congress, or because of an order to perform duty issued by the governor pursuant to section 5919.29 of the Revised Code is entitled, during the period designated in the order or act, to a leave of absence and to be paid, during each monthly pay period of that leave of absence, the lesser of the following:
>
> (1) The difference between the permanent public employee's gross monthly wage or salary as a permanent public employee and the sum of the permanent public employee's gross uniformed pay and allowances received that month;
>
> (2) Five hundred dollars.

Ohio Rev. Code § 5923.05. There is no dispute that plaintiff is a "permanent public employee" and that he has been called to active duty in "the Ohio national guard" for a period "longer than a month." During the telephone conference conducted on December 21, 2011, defendants' counsel represented to the Court, without opposition from plaintiff's counsel, that the Board is a "political subdivision" within the meaning of the statute.

The dispute as it relates to the TRO involves interpretation of the Agreement in light of § 5923.05. Plaintiff argues that the Agreement entitles him to 31 days of military leave, which he interprets as 31 work days, at full pay before the so-called "differential pay" kicks in. The statute, on the other hand, is clear that a "month" is 22 eight-hour work days. The Memo dated December 19, 2011, sent by the Board to plaintiff, explains that "the correct interpretation of the military leave provision contained in [the] employment contract and agency policy[]" is that plaintiff will receive full pay for a period of 22 work days. This 22-day period covers "January 9, 2012 through and including February 8, 2012[]"(which is 31 calendar days), but

6

excludes the federal holiday on January 16, 2012, "which is not counted as a day of paid leave[.]" (Doc. No. 7-2.) The Board's position is not inconsistent with either the Agreement or the statute.

The Board is constrained by the terms of the statute to pay plaintiff only the amount of full pay he is entitled to.[2] Plaintiff, however, points to § 5923.05(G) as proof that the 22 days is merely the minimum, not the maximum, the Board can pay. Subsection (G) provides: "Any permanent public employee of a political subdivision whose employment is governed by a collective bargaining agreement with provision for the performance of service in the uniformed services shall abide by the terms of that collective bargaining agreement with respect to the performance of that service, except that no collective bargaining agreement may afford fewer rights and benefits than are conferred under this section." The problem with plaintiff's reliance on this subsection is that his employment contract is not a collective bargaining agreement. In addition, his contract provides that "[i]f any portion of this contract is deemed to be illegal due to conflict with state or federal law, the remainder of the contract shall remain in full force and effect." (Doc. No. 1-1, § XI, E.) Therefore, *if* the Agreement is construed as providing 31 days of paid military leave, that section cannot stand in light of the statutory provision that paid leave is only for 22 days.[3]

The Court concludes that plaintiff has not shown a likelihood of success on the merits with respect to this issue.

---

[2] The Court also notes that during this period of full pay from the Board, plaintiff will also be receiving his full military pay. Therefore, he will actually be earning more than he is accustomed to for this first 31-day period.

[3] During the telephone conference on December 21, 2012, plaintiff's counsel conceded that, if the statute is interpreted as the maximum that can be paid, plaintiff's position cannot stand. Plaintiff's counsel was unable to supply the Court with any case law that supports his position that 22 days of fully paid military leave is the minimum, not the maximum.

### 2. Whether Plaintiff Will Suffer Irreparable Harm

Even if plaintiff were able to show likelihood of success on the merits, for a TRO to issue (in order to maintain the status quo), he must also show that he will suffer irreparable harm absent immediate injunctive relief. "When courts consider irreparable harm, '[t]he key word ... is irreparable,' and '[t]he possibility that adequate compensatory or other corrective relief will be available at a later date ... weighs heavily against [the] claim.'" *Brake Parts, Inc. v. Lewis*, No. 10-6531, 2011 WL 3510225, at *5 (6th Cir. Aug. 11, 2011) (omissions in original) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Here, if plaintiff prevails as to his interpretation of the Agreement with respect to military leave and past practices of the Board with respect to the documentation required for differential pay, compensatory damages will make him whole.

During the telephone conference, plaintiff's counsel asserted that plaintiff needs his anticipated full pay to meet his obligations, in particular, child support and mortgage payments. He argued that, if plaintiff receives the lesser pay that defendants plan to give while he is away on active duty, he might become embroiled in a domestic relations lawsuit or a foreclosure proceeding. However, irreparable harm is harm that is "actual and imminent" as opposed to "speculative or unsubstantiated." *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir.2006). That the harm is particularly speculative in this case is borne out by the fact that any of the possible actions that plaintiff fears might be filed against him should be forestalled by application of the Servicemembers Civil Relief Act, 50 U.S.C. app. § 501, *et seq.*

The Court concludes that plaintiff has not established irreparable harm which, as already noted, is a key factor in the analysis when deciding whether to issue a TRO.

### 3. Whether an Injunction Will Cause Others Substantial Harm

The Court need not examine this factor very closely. It seems rather evident that, should injunctive relief be granted and plaintiff's position is ultimately proven wrong, any overpayment of salary under the Contract and/or the statute could be recouped by the defendants through payroll adjustments.

### 4. The Impact of an Injunction on the Public Interest

The public interest in affording appropriate compensation and benefits for public employees who are engaged in active military service favors plaintiff. However, the equally strong public interest in requiring political subdivisions to uphold statutory provisions favors defendants. Therefore, this element is balanced in favor of both parties.

## III. CONCLUSION

For the reasons set forth herein, the Court concludes that plaintiff is unable to make the showing necessary for the issuance of a temporary restraining order. Accordingly, to the extent Doc. No. 7 seeks that relief, it is **DENIED**.

## IV. ORDER OF REFERENCE

The Court refers this action to Magistrate Judge Kathleen B. Burke to conduct the Case Management Conference in this case. Due to the fact that plaintiff will be actively deployed on January 9, 2012, the Court requests that, if at all possible, the CMC be conducted by no later than January 6, 2012, even if defendants have not yet filed a responsive pleading by then. In addition, defendants are requested to file forthwith, at the very least, a notice of appearance so that the Court will be able to make contact with defendants' counsel electronically.

Additionally, the Court hereby refers this action to Magistrate Judge Burke for general pretrial supervision. This referral includes the preparation of reports and recommendations on dispositive motions. Hereafter all filings in this action shall bear the names of both Judge Sara Lioi and Magistrate Judge Kathleen B. Burke.

The Court reserves the right to rule directly on any matter in this case.

The parties may still exercise their right to consent to the exercise of full jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1) and Local Rule 73.1, and this order does not alter the parties' responsibility to file their election with the Court with reference to such consent, if they have not already done so.

This action shall be returned to this Court when ready for trial unless all parties consent to trial before Magistrate Judge Burke.

**IT IS SO ORDERED**.

Dated: December 23, 2011

                                         **HONORABLE SARA LIOI**
                                         **UNITED STATES DISTRICT JUDGE**