**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEVIN McGEE | ) | CASE NO.  5:11-cv-2751 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | MAGISTRATE JUDGE BURKE |
| vs. | ) | |
| | ) | REPORT & RECOMMENDATION |
| | ) | |
| THOMAS ARMSTRONG, et al. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This case is before the undersigned Magistrate Judge on Defendants' Motion to Stay Proceedings and/or Compel Arbitration for Certain Claims of Plaintiff (the "Motion") filed on June 18, 2012.  Doc. 83.  Defendants seek to compel arbitration of Plaintiff's common law and statutory claims "related to any allegations of removal, suspension, or demotion," including claims brought under the  Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq.  Doc. 83, p. 9.  Plaintiff opposes the Motion.  Briefing was completed on November 5, 2012.[1]  Docs. 83, 102, 104, 131, 132, 135, 136.  For the reasons set forth below, the undersigned recommends that the Motion be **GRANTED**.

---

[1] After Defendants filed their Reply Brief on August 1, 2012, (Doc.104), the Court issued orders (Docs. 130 and 134) requiring the parties to submit supplemental briefs regarding two matters:  (1)  the current status of the arbitration proceeding referred to in Defendants' Reply Brief ; and (2) the question whether the parties agreed to arbitrate issues pertaining to the arbitrability of Plaintiff's claims.

1

### I.    Background[2]

Plaintiff Kevin McGee ("Plaintiff" or "McGee") is a terminated former management employee of Defendant County of Summit Developmental Disabilities Board ("Board").  Before the Board terminated him in April 2012, McGee served as the Board's Director of Marketing, Public Relations and Specialty Businesses.  Doc. 57, ¶¶ 1, 15.  McGee is also a Second Lieutenant in the Ohio Army National Guard (the "National Guard") and has been a member of the National Guard for over three years.  Doc. 57, ¶ 1.  He was engaged in active military duty service at various times during each of the years 2008 through 2012.  Doc. 57, ¶ 25.

Defendant Thomas Armstrong ("Armstrong") is the Board's Superintendent, a manager in the chain of command within the Board, and McGee's immediate supervisor.  Doc. 57, ¶¶ 5, 6, 17.  Defendant Lisa Kamlowsky ("Kamlowsky") is the Board's Assistant Superintendant and Chief Legal Counsel and a manager in the chain of command within the Board.  Doc. 57, ¶¶ 7, 18.  Plaintiff alleges in his Complaint that Armstrong and Kamlowsky are "employers." Doc. 57, ¶¶ 5 and 7.

In his Second Amended Complaint (Doc. 57), McGee alleges that Defendants terminated his employment and discriminated against and retaliated against him in other employment-related actions because of his military status and service.  As described more fully below, he alleges violations of federal and state statutes and common law causes of action.[3]  Doc. 57, Doc. 102.

McGee was employed under a renewable one-year limited contract (the "Employment

---

[2] The background facts are taken from Plaintiff's Second Amended Complaint. Doc. 57.

[3] Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq., Family Medical Leave Act ("FMLA"), 42 U.S.C. § 1983 (due process, equal protection, First Amendment, freedom of speech, freedom of association, freedom to petition for redress of grievances), Ohio Civil Rights Act, O.R.C. § 4112.01 et seq., wage and hour violations for failure to pay final paycheck and accrued vacation after termination, breach of contract, and defamation. Doc. 57, Doc. 102, p. 1.

Contract").[4] Doc. 57-1. The Employment Contract contains a section addressing termination and employee discipline, which includes the arbitration provisions at issue. Specifically, the "Contract Termination-Employee Discipline" section provides:

> During the term of the Contract, the Employee may be removed, suspended or demoted for cause pursuant to ORC 5126.23. . . .
>
> In consideration for the compensation and other benefits set forth herein, and after specifically considering this WAIVER OF RIGHTS, the Employee agrees that the parties shall not use the statutory procedures set forth in ORC 5126.23 for the resolution of any matter regarding the removal, suspension or demotion of the Employee. Any dispute, claim or cause of action arising out of such removal, suspension or demotion shall be submitted to binding arbitration under the then existing rules of the American Arbitration Association.
>
> Within fourteen (14) calendar days following notification to the Employee of the Superintendent's decision to remove, suspend or demote the Employee, the Employee shall provide written notification to the Superintendent of the Employee's intention to proceed to arbitration. . . .
>
> ***
>
> The question of arbitrability must be raised by either party before the arbitrator hears the merits of the dispute. If a question of arbitrability is raised, the arbitrator may either rule on this issue or reserve ruling and hear the merits of the dispute before issuing a ruling on this question.
>
> The decision of the arbitrator shall be final and binding upon the Board and the Employee. The parties expressly waive the procedures for appeal set forth in Ohio Revised Code Chapter 5126 in order to engage in this expedited, binding arbitration procedure.
> ***

Doc. 57-1, Section VIII.

In their briefing on the Motion, the parties have provided information regarding the steps they have taken relative to arbitration. Docs. 104-3, 131, 132. In summary, very little has been done due to the parties' disagreement as to whether Plaintiff's claims are arbitrable.

---

[4] The Employment Contract states that it is a "'limited' contract within the meaning of Ohio Revised Code (ORC) 5126.20." Doc. 57-1, Section I. A "limited contract" is defined as "a contract of limited duration which is renewable at the discretion of the superintendent." *See* O.R.C. § 5126.20(D). The initial term of the Employment Contract was October 3, 2010, through October 2, 2011, with a provision for automatic renewal for successive one-year periods unless the Superintendent notifies the employee in writing no later than 90 days prior to the expiration of the contract. Doc. 57-1, Section IX.

On April 25, 2012, after he received notice that his employment was being terminated, McGee sent a letter to the Board demanding a hearing before the Board pursuant to O.R.C. § 5126.23 or arbitration if the Board was unwilling, unable or refused to schedule a hearing pursuant to O.R.C. § 5126.23. Doc. 104-3. Plaintiff asserts that the Defendants refused his demand for a hearing before the Board but did agree to arbitration. Doc. 132, p. 1. Counsel for the parties apparently had some conversations regarding arbitration and counsel for Defendants sent McGee's counsel a form to be submitted to the American Arbitration Association ("AAA") to request a potential panel of arbitrators. Doc. 131. Defendants assert, and Plaintiff does not deny, that McGee's counsel failed to sign or return the AAA form or to pay his share of the arbitration fee. Docs. 131 and 132. Plaintiff explains this failure by stating that all of his available funds are being used to finance this litigation and that he "maintains that the proper forum for litigation of these matters is Federal District Court rather than arbitration." Doc. 132, pp. 1-2

## II. Plaintiff's Claims

McGee filed his original Complaint in this action (Doc. 1) on December 20, 2011, immediately prior to a three-month deployment by the National Guard.[5] On February 21, 2012, with leave of court, McGee filed his First Amended Complaint. Doc. 24. On May 17, 2012, following his termination by Defendants,[6] McGee, with leave of court, filed his Second Amended Complaint. Doc. 57. As summarized below, McGee asserts fourteen (14) causes of action against Defendants, the primary thrust of which is that Defendants took various

---

[5] The Complaint was accompanied by Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7), which sought to enjoin Defendants from failing to pay Plaintiff the salary and pay differential allegedly owed under the Employment Contract during Plaintiff's military leave. On December 23, 2011, the Court denied Plaintiff's TRO Motion. Doc. 10.

[6] McGee alleges that Defendants terminated him on April 21, 2012. Doc. 57, ¶ 33.

4

employment-related actions against him based on his status as an active member of the Ohio Army National Guard. Doc. 57, ¶¶ 47-138. [7]

1. <u>First Cause of Action</u> – Civil Rights Violations (42 U.S.C. § 1983). Doc. 57, ¶¶ 47-53 – alleging a deprivation of equal protection of the laws; deprivation of a property interest in his permanent public position of public employment without due process of law, violation of his First Amendment rights to free speech and freedom of association. Doc. 57, ¶¶ 50-51.

2. <u>Second Cause of Action</u> – Discipline, Suspension and Failure to Promote and Retaliation in Violation of O.R.C. § 4112.01, et seq. – Military Discrimination. Doc. 57, ¶¶ 54-61 – alleging loss based on a refusal to promote or renew contract for two years and suspension and discipline. Doc. 57, ¶¶ 55-56.

3. <u>Third Cause of Action</u> – Discipline, Suspension and Failure to Promote and Retaliation in Violation of Public Policy. Doc. 57, ¶¶ 62-72 – alleging loss based on refusal to promote/renew and subsequent suspension and discipline. Doc. 57, ¶ 67.

4. <u>Fourth Cause of Action</u> - Retaliation in Violation of Ohio Revised Code § 4112.01, et seq. – Military Status Discrimination and Retaliation in violation of the The Civil Rights Act (42 U.S.C. § 1983) and Retaliation in Violation of Public Policy and USERRA (38 U.S.C. § 4301 et seq.). Doc. 57, ¶¶ 73-80 – alleging loss based on suspension and discipline and failure to promote/renew contract. Doc. 57, ¶ 75.

5. <u>Fifth Cause of Action</u> - USERRA Employment and Reemployment Rights of Members of the Uniformed Services (38 U.S.C. § 4301 et seq.). Doc. 57, ¶¶ 81-86 – alleging a denial of employment, reemployment, retention in employment, promotion, or any benefit of employment. Doc. 57, ¶ 83.

6. <u>Sixth Cause of Action</u> - Breach of Contract. Doc. 57, ¶¶ 87-91 – alleging a failure to pay required salary and required military leave pay. Doc. 57, ¶ 88(a)-(b).

7. <u>Seventh Cause of Action</u> – Civil Right Violations (42 U.S.C. § 1983). Doc. 57, ¶¶ 92-98 - alleging that Defendants' discharge of Plaintiff deprived him of equal protection of the laws and violated his right to free speech by denying him a governmental benefit, his job, and depriving him of a property interest in his permanent position of public employment without due process of law and in violation of his rights to free speech. Doc. 57, ¶ 95-96.

8. <u>Eighth Cause of Action</u> – Termination and Retaliation in Violation of Ohio Revised Code § 4112.01 et seq. – Military Status Discrimination. Doc. 57, ¶¶ 99-106 - alleging a loss based on Defendants' discharge of Plaintiff. Doc. 57, ¶¶ 100-101.

---

[7] There is considerable overlap between a number of Plaintiff's Causes of Action, i.e., the First and Seventh, the Second and Eighth, the Fourth and Tenth, the Fifth and Eleventh, and the Sixth and Twelfth Causes of Action.

5

9. Ninth Cause of Action – Discharge and Retaliation in Violation of the Family Medical Leave Act of 1993 (29 U.S.C. §§ 2611 et seq.).  Doc. 57, ¶¶ 107-111 – alleging wrongful discharge and loss as a result of Defendants' failure to restore Plaintiff to the position he held before his military leave or an equivalent position.  Doc. 57, ¶ 108-111.

10. Tenth Cause of Action - Retaliation in Violation of Ohio Revised Code § 4112.01, et seq. – Military Status Discrimination and Retaliation in violation of the the Civil Rights Act (42 U.S.C. § 1983) and Retaliation in Violation of Public Policy and USERRA (38 U.S.C. § 4301 et seq.).  Doc. 57, ¶¶ 112-119 – alleging loss based on discharge.  Doc. 57, ¶ 114.

11. Eleventh Cause of Action - USERRA Employment and Reemployment Rights of Members of the Uniformed Services (38 U.S.C. § 4301 et seq.).  Doc. 57, ¶¶ 120-125 – alleging a discharge on the basis of military service.  Doc. 57, ¶ 122.

12. Twelfth Cause of Action - Breach of Contract.  Doc. 57, ¶¶ 126-129 – alleging a failure to pay required salary and required military leave pay and discharge for illegal reasons and not for cause.  Doc. 57, ¶ 127(a)-(c).

13. Thirteenth Cause of Action – Ohio Wage and Hour Violations (ORC Section 4113.15).  Doc. 57, ¶¶ 130-133 – alleging a failure to pay wages and benefits since Defendants' termination of Plaintiff on April 21, 2012, and a failure to pay semi-monthly wages and benefits.  Doc. 57, ¶¶ 131-132.

14. Fourteenth Cause of Action – Defamation.  Doc. 57, ¶¶ 134-138 – alleging that defendant Armstrong falsely stated on April 20, 2012, and April 26, 2012, that Plaintiff had engaged in unethical conduct.  Doc. 57, ¶ 135.

## III.   Law and Analysis

With limited exceptions not applicable here, the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., applies to employment contracts containing arbitration provisions. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)(finding that the provision in § 1 of the FAA exempting "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign commerce" is confined to contracts of transportation workers).  The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to seek an order compelling arbitration, 9 U.S.C. § 4,

and provides for a stay of proceedings where an issue is referable to arbitration.  9 U.S.C. § 3.  The Sixth Circuit has set forth a four-part test for a court to apply when considering a motion to stay proceedings and compel arbitration under the FAA.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (2000).

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement, third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.*

The first *Stout* factor is satisfied here because Plaintiff admits the existence of the Employment Contract and the arbitration provision and does not contend that the arbitration provision is unconscionable.  Rather, Plaintiff opposes the Motion based on his contention that the arbitration provision is narrow and specific and the claims asserted in this litigation are not within its scope.  Doc. 102, pp. 2-3; Doc. 136, p. 3.  Plaintiff's argument thus asks the Court to consider the second *Stout* factor, the scope of the arbitration provision.  However, before the Court can reach that issue, it needs to address a related, but different, question:  Who is to decide which disputes fall within the scope of the arbitration provision, i.e., did the parties agree to arbitrate arbitrability?  If so, the arbitrator must decide which disputes are arbitrable; if not, the Court must decide. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute . . ., so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted); *Warren Steel Holdings, LLC v. Williams*, 2007 WL 2688240, *3 (N.D. Ohio 2007).  "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties."

7

*Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989).  "[P]arties to an agreement are free to provide that the question of arbitrability is to be decided by an arbitrator." *Wuliger v. Gilbert*, 261 F.Supp.2d 946, 949 (N.D. Ohio 2003).

The standard to be applied in determining whether the parties agreed to arbitrate arbitrability differs from the standard applied to determine which disputes fall within the scope of an arbitration agreement.  With respect to the latter, doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-577 (6th Cir. 2003) (internal citations omitted).  With respect to the former question, however, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options*, 514 U.S. at 944.

In this case, as in *Warren Steel Holdings*, the parties did clearly and unmistakably agree to arbitrate arbitrability.  There are two provisions in the Employment Contract that establish the parties' intent to arbitrate arbitrability.   The first is the provision that states:

> Any dispute, claim or cause of action arising out of such removal, suspension or demotion shall be submitted to binding arbitration <u>under the then existing rules of the American Arbitration Association.</u>

Doc. 57-1, Section VII, p. 4 (emphasis supplied).

The *Employment Arbitration Rules and Mediation Procedures* of the American Arbitration Association pursuant to which the parties agreed to arbitrate expressly provide that the question of arbitrability is for the arbitrator:

> 6.    Jurisdiction
>
> a.  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the

8

>   arbitration agreement.
>
> b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that a contract is null and void shall not for that reason alone render invalid the arbitration clause.
>
> c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as a part of the final award.

AAA *Employment Arbitration Rules and Mediation Procedures* ("AAA Rules"), Section 6, amended and effective November 1, 2009.[8]

The parties' agreement to be bound by the AAA Rules clearly demonstrates that "the parties agreed to arbitrate arbitrability by the terms of the arbitration provision." *Warren Steel Holdings*, 2007 WL 2688240 at *3; *see also Turi v. Main Street Adoption Services, LLP*, 633 F.3d 496 506-507 (2011), *citing Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2nd Cir. 2005) (Sixth Circuit acknowledges that the Second Circuit has held that "incorporation of the AAA rules 'serves as clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to an arbitrator'"); *see also Bishop v. Gosiger, Inc.*, 692 F.Supp.2d 692, 769 (E.D. Mich. 2010) (recognizing that several district courts within the Sixth Circuit have

---

[8]The AAA Rules provide, in part, that "[t]he parties shall be deemed to have made these rules part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association . . . or under its *Employment Arbitration Rules and Mediation Procedures* for arbitration by the AAA of an employment dispute without specifying the particular rules." *See* AAA *Employment Arbitration Rules and Mediation Procedures*, Section 6, amended and effective November 1, 2009, Section 1. While the AAA Rules are not attached to Plaintiff's Second Amended Complaint, the Employment Contract, which incorporates those rules, is attached (Doc. 57-1). Further the AAA, through its public disclosure of its rules, has made them capable of accurate and ready determination.
http://www.adr.org/aaa/faces/rules/searchrules/rulesdetail?doc=ADRSTG_004366&_afrLoop=605161061427986&_afrWindowMode=0&_afrWindowId=qxj2ubpr1_134#%40%3F_afrWindowId%3Dqxj2ubpr1_134%26_afrLoop%3D605161061427986%26doc%3DADRSTG_004366%26_afrWindowMode%3D0%26_adf.ctrl-state%3Dqxj2ubpr1_208. Thus, in accordance with Evid R. 201, the undersigned takes judicial notice of the AAA Rules. *See e.g., Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 362 (Tenn. 2001) (finding that a trial court properly took judicial notice of AAA Rules).

concluded that incorporation of AAA rules into an arbitration provision can constitute clear and unmistakable evidence that the parties intended to submit the issue of arbitrability to an arbitrator).

The second provision of the Employment Contract that establishes that the parties clearly and unmistakably agreed to arbitrate arbitrability is the provision that states:

> The question of arbitrability must be raised by either party before the arbitrator hears the merits of the dispute. If a question of arbitrability is raised, the arbitrator may either rule on this issue or reserve ruling and hear the merits of the dispute before issuing a ruling on this question.

Doc. 57-1, Section VIII, pp. 4-5.

Plaintiff does not dispute the existence of the provisions of the Employment Contract in which the parties agreed to arbitrate arbitrability.  Instead he asserts that the parties did not designate the arbitrator as the sole person to decide the question of arbitrability.  Doc.  136, pp. 102.  Thus, Plaintiff appears to be arguing, in part, that the District Court is required to decide questions of arbitrability notwithstanding the parties' agreement to have an arbitrator decide those questions because the parties did not expressly provide that the District Court may not decide such questions.  Doc. 136, pp.1-2.  Plaintiff cites no law to support this proposition and the case law is to the contrary.  *See  First Options*, 514 U.S. 938, *Warren Steel Holdings*, 2007 WL 2688240.  Accordingly, for the reasons set forth herein, the undersigned concludes that the parties did agree to arbitrate arbitrability and that agreement should be enforced.

However, before reaching a final conclusion as to whether the arbitrator or the court should decide the arbitrability of Plaintiff's claims, the Court must take one additional step. Under the Sixth Circuit's decision in *Turi v. Main Street Adoption Services, LLP*, 633 F.3d 496, 511 (2011), the Court must determine whether the claims are "at least arguably" within the scope of the arbitration provision.  *Turi* instructs that an arbitrator would not have the authority to

decide the arbitrability of claims that "are clearly outside the scope of the arbitration clause." 633 F.3d at 507. "A dispute that plainly has nothing to do with the subject matter of an arbitration agreement, for example, would not give the arbitrator the authority to decide the arbitrability of this wholly unrelated claim." 633 F.3d at 507.

The arbitration clause in *Turi* was a very narrow one. Here, the arbitration clause is not narrow. It is very broad with respect to claims relating to any removal, suspension, or demotion. Specifically, the parties agreed:

> <u>Any</u> dispute, claim or cause of action <u>arising out of</u> such removal, suspension or demotion shall be submitted to binding arbitration . . . .

Doc. 57-1, Section VIII, p. 4 (emphasis supplied).

With very limited exceptions, all of Plaintiff's Causes of Action include allegations relating to a suspension, a failure to promote, a discharge and/or a denial of a right to public employment and therefore they all are at least arguably subject to arbitration under the terms of the Employment Contract.[9] The possible exceptions are his Sixth and a portion of his Twelfth Causes of Action, which allege that Defendants breached the Employment Contract by failing to pay him the required salary and pay differential during his military leave, and his Fourteenth Cause of Action, which alleges defamation. The Sixth and the noted portion of the Twelfth Cause of Action do not arise out of a "removal, suspension or demotion;" accordingly, they do not arguably fall within the scope of the arbitration provision of the Employment Contract. By contrast, the Fourteenth Cause of Action does at least arguably fall within the scope of the arbitration provision because it is based on statements allegedly made by Armstrong on or after the date of Plaintiff's discharge, which, according to Plaintiff's filings with the Court, appear to

---

[9] The fact that Plaintiff uses the term "discharge" in his Second Amended Complaint rather than the term "removal," which is used in the arbitration provision of the Employment Contract, does not alter the analysis or conclusions herein.

have related to Plaintiff's discharge. Doc. 57, ¶¶ 134-138, Doc. 55, pp. 2-3, Doc. 65-1, p. 4.[10] Accordingly, it is the arbitrator who should determine whether Plaintiff's Causes of Action, with the exception of the Sixth and the portion of the Twelfth described above,[11] are in fact within the scope of the parties' arbitration agreement.[12] *In re Goe Lima, LLC v. Ohio Farmers Insurance Co.*, 2012 WL 4634885, * 10 (Bankr. N.D. Ohio 2012) (referring case to arbitration, in part, because claims at least arguably fell within the contemplated scope of the agreement). Plaintiff's argument that his claims against Defendants Kamlowsky and Armstrong cannot be covered by the arbitration clause because they were not parties to the Employment Contract (Docs. 102, p. 2; 136, p. 3), is undercut by his Second Amended Complaint, in which he alleges that Kamlowsky and Armstrong are "employers" (Doc. 57, ¶¶ 5 and 7). Moreover, Plaintiff cites no authority for his argument. Thus, the undersigned's recommendation relates to Plaintiff's claims against all Defendants.

Plaintiff also argues that this Court should not compel arbitration because, while the arbitration provision authorizes the arbitrator "to affirm, disaffirm, or modify any decision to remove, suspend, or demote the Employee," it does not give the arbitrator authority to provide relief available under his statutory claims, such as back pay, front pay, general damages, punitive damages and injunctive relief. Doc. 136, p. 3. However, the AAA Rules, under which the

---

[10] In concluding that the Fourteenth Cause of Action is at least arguably within the scope of the arbitration provision, the undersigned has taken into account the standard that doubts are to be resolved in favor of arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-577 (6th Cir. 2003) (internal citations omitted).

[11] The portion of the Twelfth Cause of Action that alleges that Defendants breached the Employment Contract when discharging Plaintiff is certainly at least arguably within the scope of the arbitration provision. Doc. 57-1, ¶ 127(c).

[12] The undersigned's conclusion that Plaintiff's claims, with very limited exceptions, are at least arguably within the scope of the parties' agreement to arbitrate is not intended as an advisory opinion or direction to the arbitrator to determine that those claims are in fact with the scope of the arbitration provision of the Employment Contract.

parties agreed to be bound, do provide such authority. Specifically, the AAA Rules state:

> The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law.

*See* AAA *Employment Arbitration Rules and Mediation Procedures*, Section 39(d), amended and effective November 1, 2009.

Further, the liberal policy under the FAA favoring arbitration agreements applies "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'"[13] *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) (internal citations omitted). Plaintiff acknowledges that USERRA claims and FMLA claims have been held to be arbitrable. Doc. 102, p. 4; s*ee e.g. Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 563 (6th Cir. 2008) (agreeing with other district courts that USERRA claims are arbitrable because there is no ambiguity in the text of USERRA regarding preemption of arbitration agreements); *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273-274 (4th Cir. 1997) (indicating that "[n]othing in the Family Medical Leave Act suggests that Congress wished to exempt disputes arising under it from the coverage of the FAA."). Further, Plaintiff has failed to point to language in any of the other statutes under which he seeks relief that manifests Congress' intent to preclude the enforcement of agreements to arbitrate such claims. Thus, the fact that Plaintiff has asserted statutory claims does not foreclose an arbitrator from deciding issues of arbitrability.

As his final argument against arbitration, Plaintiff asserts that this case is almost one year

---

[13] In *CompuCredit*, the Court held that the Credit Repair Organization Act, which requires credit repair organizations to provide consumers with a notice concerning their right to sue, did not prohibit enforcement of the parties' agreement to arbitrate. *CompuCredit*, 132 S.Ct. 665. The Court concluded that "[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced according to its terms." *Id.* at 673.

old; the parties have expended significant resources and time litigating all of the claims; and the case is on the verge of dispositive motions being filed.  Doc. 136, p. 3.  Plaintiff's argument that this Court should not compel arbitration because this case is almost one year old is unpersuasive.  Plaintiff cites no supporting authority, nor do the facts help him.  While Plaintiff is correct that he filed this case almost one year ago, the facts and claims have changed since that time.  Plaintiff was employed by the Board on the date of filing, was about to be deployed, and was seeking injunctive relief in connection with that deployment.  Approximately four months later, Defendants terminated Plaintiff.  It was not until May 17, 2012, that Plaintiff filed his Second Amended Complaint, which contained additional Causes of Action.  Doc. 57.   Although the parties have expended resources and time in litigating the claims in this case, those efforts largely have been devoted to discovery and they will not be wasted by virtue of this recommendation.  Discovery would have been necessary even if this case had started with arbitration and neither party has asserted that discovery taken in this case will not be available to them in an arbitration proceeding.

Because the parties have "clearly and unmistakably" agreed to arbitrate issues relating to arbitrability, the undersigned recommends that Defendants' Motion to Compel arbitration (Doc. 83) be **GRANTED** with respect to all of Plaintiff's Causes of Action except for the Sixth Cause of Action and the portion of the Twelfth Cause of Action that alleges a breach of contract with respect to Plaintiff's military leave salary and pay differential.  The undersigned further recommends that this case be stayed pending the outcome of arbitration.

November 14, 2012

**KATHLEEN B. BURKE**
**U.S. MAGISTRATE JUDGE**

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).