# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN V. McGEE, | ) | CASE NO. 5:11CV2751 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS L. ARMSTRONG, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is the Report and Recommendation ("R&R") (Doc. No. 140) of Magistrate Judge Kathleen Burke, recommending that this Court substantially grant defendants' motion to compel arbitration and, further, grant the accompanying motion to stay proceedings pending arbitration.[1] Plaintiff filed objections (Doc. No. 143), and defendants filed their opposition to the objections (Doc. No. 144). Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters properly raised in the objections.[2] For the reasons discussed herein, plaintiff's objections are overruled and the R&R is accepted. Defendants' motion to compel arbitration is **GRANTED**, and the case is stayed until that arbitration is completed.

---

[1] Defendants' motion is Doc. No. 83. Plaintiff filed his opposition (Doc. No. 102), and defendants filed a reply (Doc. No. 104). At the Magistrate Judge's request (Doc. No. 130), each side also filed a supplemental brief relating to the merits of the motion. (Defendants' brief, Doc. No. 135; plaintiff's brief, Doc. No. 136.)

[2] The Court's review of the R&R was delayed by a stay of proceedings from January 31, 2013 through April 17, 2014, necessitated by plaintiff's having been called to active military duty. The Court undertook the review upon being notified that plaintiff had returned from active duty.

## STANDARD OF REVIEW

Matters that are dispositive of a case may be referred to a magistrate judge for "proposed findings and recommendations[.]" 28 U.S.C. § 636(b)(1)(B). "Within fourteen days after being served a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). Thereafter, under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.").

"An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections").

After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## THE REPORT AND RECOMMENDATION

The R&R sets forth the background facts and identifies the fourteen causes of action, all based on plaintiff's second amended complaint. (*See* R&R at 1894-96; 1896-98.) Plaintiff has not specifically objected to anything in Sections I or II of the R&R. Therefore, pursuant to Fed. R. Civ. P. 72(b)(3), the Court accepts both the factual and procedural background[3] summarized in Section I of the R&R, and the listing of the fourteen causes of action set forth in Section II of the R&R. For ease of review, the Court incorporates those sections herein.

## I. Background

Plaintiff Kevin McGee ("Plaintiff" or "McGee") is a terminated former management employee of Defendant County of Summit Developmental Disabilities Board ("Board"). Before the Board terminated him in April 2012, McGee served as the Board's Director of Marketing, Public Relations and Specialty Businesses. Doc. 57, ¶¶ 1, 15. McGee is also a Second Lieutenant in the Ohio Army National Guard (the "National Guard") and has been a member of the National Guard for over three years. Doc. 57, ¶ 1. He was engaged in active military duty service at various times during each of the years 2008 through 2012. Doc. 57, ¶ 25.

Defendant Thomas Armstrong ("Armstrong") is the Board's Superintendent, a manager in the chain of command within the Board, and McGee's immediate supervisor. Doc. 57, ¶¶ 5, 6, 17. Defendant Lisa Kamlowsky ("Kamlowsky") is the Board's Assistant Superintendant [sic] and Chief Legal Counsel and a manager in the chain of command within the Board. Doc. 57, ¶¶ 7, 18. Plaintiff alleges in his Complaint that Armstrong and Kamlowsky are "employers." Doc. 57, ¶¶ 5 and 7.

In his Second Amended Complaint (Doc. 57), McGee alleges that Defendants terminated his employment and discriminated against and retaliated against him in other employment-related actions because of his military status and service. As described more fully below, he alleges violations of federal and state statutes and common law causes of action.[3] Doc. 57, Doc. 102.

---

[3] The factual background is accepted solely for purposes of ruling on the current motion and objections to the R&R. This should not be construed as fact-finding since any and all facts will be put to the appropriate burden of proof if and when the case proceeds before this Court.

[3] Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq., Family [and] Medical Leave Act ("FMLA"), 42 U.S.C. § 1983 (due process, equal protection, First Amendment, freedom of speech, freedom of association, freedom to petition for redress of grievances), Ohio Civil Rights Act, O.R.C. § 4112.01 et seq., wage and hour violations for failure to pay final paycheck and accrued vacation after termination, breach of contract, and defamation. Doc. 57, Doc. 102, p. 1.

McGee was employed under a renewable one-year limited contract (the "Employment Contract"). [footnote omitted.] Doc. 57-1. The Employment Contract contains a section addressing termination and employee discipline, which includes the arbitration provisions at issue. Specifically, the "Contract Termination-Employee Discipline" section provides:

> During the term of the Contract, the Employee may be removed, suspended or demoted for cause pursuant to ORC 5126.23. . . .
>
> In consideration for the compensation and other benefits set forth herein, and after specifically considering this WAIVER OF RIGHTS, the Employee agrees that the parties shall <u>not</u> use the statutory procedures set forth in ORC 5126.23 for the resolution of any matter regarding the removal, suspension or demotion of the Employee. Any dispute, claim or cause of action arising out of such removal, suspension or demotion shall be submitted to binding arbitration under the then existing rules of the American Arbitration Association.
>
> Within fourteen (14) calendar days following notification to the Employee of the Superintendent's decision to remove, suspend or demote the Employee, the Employee shall provide written notification to the Superintendent of the Employee's intention to proceed to arbitration. . . .
>
>              ***
>
> The question of arbitrability must be raised by either party before the arbitrator hears the merits of the dispute. If a question of arbitrability is raised, the arbitrator may either rule on this issue or reserve ruling and hear the merits of the dispute before issuing a ruling on this question.
>
> The decision of the arbitrator shall be final and binding upon the Board and the Employee. The parties expressly waive the procedures for appeal set forth in Ohio Revised Code Chapter 5126 in order to engage in this expedited, binding arbitration procedure.
>
>              ***

Doc. 57-1, Section VIII.

4

In their briefing on the Motion, the parties have provided information regarding the steps they have taken relative to arbitration. Docs. 104-3, 131, 132. In summary, very little has been done due to the parties' disagreement as to whether Plaintiff's claims are arbitrable.

On April 25, 2012, after he received notice that his employment was being terminated, McGee sent a letter to the Board demanding a hearing before the Board pursuant to O.R.C. § 5126.23 or arbitration if the Board was unwilling, unable or refused to schedule a hearing pursuant to O.R.C. § 5126.23. Doc. 104-3. Plaintiff asserts that the Defendants refused his demand for a hearing before the Board but did agree to arbitration. Doc. 132, p. 1. Counsel for the parties apparently had some conversations regarding arbitration and counsel for Defendants sent McGee's counsel a form to be submitted to the American Arbitration Association ("AAA") to request a potential panel of arbitrators. Doc. 131. Defendants assert, and Plaintiff does not deny, that McGee's counsel failed to sign or return the AAA form or to pay his share of the arbitration fee. Docs. 131 and 132. Plaintiff explains this failure by stating that all of his available funds are being used to finance this litigation and that he "maintains that the proper forum for litigation of these matters is Federal District Court rather than arbitration." Doc. 132, pp. 1-2[.]

(R&R at 1894-96, footnote 3 in original; footnote 4 omitted.)

In Section II, the R&R lists the following fourteen causes of action in plaintiff's second amended complaint:

1.  First Cause of Action – Civil Rights Violations (42 U.S.C. § 1983). Doc. 57, ¶¶ 47-53 – alleging a deprivation of equal protection of the laws; deprivation of a property interest in his permanent public position of public employment without due process of law, violation of his First Amendment rights to free speech and freedom of association. Doc. 57, ¶¶ 50-51.

2.  Second Cause of Action – Discipline, Suspension and Failure to Promote and Retaliation in Violation of O.R.C. § 4112.01, et seq. – Military Discrimination. Doc. 57, ¶¶ 54-61 – alleging loss based on a refusal to promote or renew contract for two years and suspension and discipline. Doc. 57, ¶¶ 55-56.

3.  Third Cause of Action – Discipline, Suspension and Failure to Promote and Retaliation in Violation of Public Policy. Doc. 57, ¶¶ 62-72 – alleging loss based on refusal to promote/renew and subsequent suspension and discipline. Doc. 57, ¶ 67.

4.        <u>Fourth Cause of Action</u> - Retaliation in Violation of Ohio Revised Code § 4112.01, et seq. – Military Status Discrimination and Retaliation in violation of the The [sic] Civil Rights Act (42 U.S.C. § 1983) and Retaliation in Violation of Public Policy and USERRA (38 U.S.C. § 4301 et seq.). Doc. 57, ¶¶ 73-80 – alleging loss based on suspension and discipline and failure to promote/renew contract. Doc. 57, ¶ 75.

5.        <u>Fifth Cause of Action</u> - USERRA Employment and Reemployment Rights of Members of the Uniformed Services (38 U.S.C. § 4301 et seq.). Doc. 57, ¶¶ 81-86 – alleging a denial of employment, reemployment, retention in employment, promotion, or any benefit of employment. Doc. 57, ¶ 83.

6.        <u>Sixth Cause of Action</u> - Breach of Contract. Doc. 57, ¶¶ 87-91 – alleging a failure to pay required salary and required military leave pay. Doc. 57, ¶ 88(a)-(b).

7.        <u>Seventh Cause of Action</u> – Civil Right Violations (42 U.S.C. § 1983). Doc. 57, ¶¶ 92-98 - alleging that Defendants' discharge of Plaintiff deprived him of equal protection of the laws and violated his right to free speech by denying him a governmental benefit, his job, and depriving him of a property interest in his permanent position of public employment without due process of law and in violation of his rights to free speech. Doc. 57, ¶ 95-96.

8.        <u>Eighth Cause of Action</u> – Termination and Retaliation in Violation of Ohio Revised Code § 4112.01 et seq. – Military Status Discrimination. Doc. 57, ¶¶ 99-106 - alleging a loss based on Defendants' discharge of Plaintiff. Doc. 57, ¶¶ 100-101.

9.        <u>Ninth Cause of Action</u> – Discharge and Retaliation in Violation of the Family [and] Medical Leave Act of 1993 (29 U.S.C. §§ 2611 et seq.). Doc. 57, ¶¶ 107-111 – alleging wrongful discharge and loss as a result of Defendants' failure to restore Plaintiff to the position he held before his military leave or an equivalent position. Doc. 57, ¶ 108-111.

10.     <u>Tenth Cause of Action</u> - Retaliation in Violation of Ohio Revised Code § 4112.01, et seq. – Military Status Discrimination and Retaliation in violation of the the [sic] Civil Rights Act (42 U.S.C. § 1983) and Retaliation in Violation of Public Policy and USERRA (38 U.S.C. § 4301 et seq.). Doc. 57, ¶¶ 112-119 – alleging loss based on discharge. Doc. 57, ¶ 114.

11.     <u>Eleventh Cause of Action</u> - USERRA Employment and Reemployment Rights of Members of the Uniformed Services (38 U.S.C. § 4301 et seq.).

6

Doc. 57, ¶¶ 120-125 – alleging a discharge on the basis of military service. Doc. 57, ¶ 122.

12.   Twelfth Cause of Action - Breach of Contract. Doc. 57, ¶¶ 126-129 – alleging a failure to pay required salary and required military leave pay and discharge for illegal reasons and not for cause. Doc. 57, ¶ 127(a)-(c).

13.   Thirteenth Cause of Action – Ohio Wage and Hour Violations (ORC Section 4113.15). Doc. 57, ¶¶ 130-133 – alleging a failure to pay wages and benefits since Defendants' termination of Plaintiff on April 21, 2012, and a failure to pay semi-monthly wages and benefits. Doc. 57, ¶¶ 131-132.

14.   Fourteenth Cause of Action – Defamation. Doc. 57, ¶¶ 134-138 – alleging that defendant Armstrong falsely stated on April 20, 2012, and April 26, 2012, that Plaintiff had engaged in unethical conduct. Doc. 57, ¶ 135.

(R&R at 1897-98.)

In Section III, the R&R reviews the controlling law with respect to arbitration. Plaintiff has not challenged the R&R's actual recitation of the law; rather, he challenges only the application of that law to the facts of the current case. Finding the R&R's presentation of the legal standard to be correct, the Court need not fully reiterate that standard herein and repeats it only to the extent necessary to give clarity to the discussion below.

As properly noted by the R&R, a court has four tasks when considering a motion to stay proceedings and compel arbitration:

[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement[;] third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

(R&R at 1899 [quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)].)

As to the first and second tasks, the R&R notes:

7

> . . . Plaintiff admits the existence of the Employment Contract and the arbitration provision and does not contend that the arbitration provision is unconscionable. Rather, Plaintiff opposes the Motion based on his contention that the arbitration provision is narrow and specific and the claims asserted in this litigation are not within its scope.

(*Id.* [citing Doc. Nos. 102 & 136].) The R&R explains that, before reaching the question of the scope of the arbitration provision in plaintiff's employment contract with the Board, "it needs to address a related, but different, question: Who is to decide which disputes fall within the scope of the arbitration provision, i.e., did the parties agree to arbitrate arbitrability?" (*Id*.) As to that related question, the R&R concludes: "In this case, . . . the parties did clearly and unmistakably agree to arbitrate arbitrability." (*Id*. at 1900.)

Considering the scope of the arbitration provision, particularly in light of the fact that plaintiff has sued two individuals who were not party to the employment contract (Thomas Armstrong and Lisa Kamlowsky), the R&R concludes that, for the most part, all of plaintiff's claims against all three defendants are "at least arguably" within the "very broad" scope of the arbitration clause. (R&R at 1902-03.) The R&R carves out the sixth cause of action and a portion of the twelfth cause of action as exceptions,[4] and determines that, otherwise, "it is the arbitrator who should determine whether Plaintiff's Causes of Action . . . are in fact within the scope of the parties' arbitration agreement." (*Id*. at 1903-04.)

Turning to the third task, the R&R concludes that, under both the AAA Rules and controlling case law, there is no indication that it was Congress's intent to make federal statutory claims non-arbitrable. (*Id*. at 1905.)

---

[4] These exceptions involve plaintiff's claims that defendants breached his employment contract by failing to pay him the required salary and pay differential during his military leave, claims that do not "arise out of [his] 'removal, suspension or demotion[.]'" (R&R at 1903.) The R&R briefly considers whether the fourteenth cause of action (defamation) might also be an exception, but decides it is not. (*Id*. at 1903-04.)

8

Finally, the R&R rejects any suggestion that it should not recommend arbitration simply because of the age of the case and the status of plaintiff as a member of the armed forces. (*Id*. at 1906.)

## PLAINTIFF'S OBJECTIONS

As noted above, under the Federal Rules and controlling case law, the Court need only provide de novo review of matters that are properly objected to. To the extent plaintiff has merely repeated verbatim the arguments made in his opposition to defendants' motion to compel arbitration and stay proceedings, those "objections" need not, and will not, be addressed.

### A.    Arbitrability of Claims Against Non-Parties to the Employment Contract

First, Plaintiff objects to the R&R's conclusion that, because defendants Armstrong and Kamlowsky are alleged in the second amended complaint to be "employers," they are subject to the arbitration clause in the employment contract even though neither is a party to that contract. Plaintiff argues that whether these two defendants can enjoy the benefit of the contract's arbitration clause requires analyzing whether they were intended third-party beneficiaries of the contract. (Objections at 1961.) This is a new argument, never raised before the magistrate judge.[5]

> . . . Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. *See United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to

---

[5] In response to defendants' motion, plaintiff argued, *inter alia*, that he had raised claims against two defendants who were not parties to the employment contract and, therefore, were not "covered by" the arbitration clause. (Response to Motion, Doc. No. 102 at 1229.) Plaintiff offered no further explanation as to why he believed two defendants identified as "employers" in the second amended complaint would not be covered by the clause. Even in his supplemental brief, he failed to change or expand upon this argument, simply holding fast to his position that his claims against Armstrong and Kamlowsky are not "subject to" arbitration. (Supp. Brief, Doc. No. 136 at 1882.)

magistrate judge's report and recommendation are deemed waived")); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988); *Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.*, 747 F.Supp. 1299, 1302-03 (S.D. Ill. 1990).

*Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *see also Broad v. N. Pointe Ins. Co.*, No. 5:11CV2422, 2014 WL 1097925, at *9 n. 7 (N.D. Ohio Mar. 19, 2014) (citing *Murr* and other cases).

Because this is a new argument made to the Court by way of objection to the R&R, it cannot be the basis for asserting error in the R&R. This argument need not be considered by the Court upon de novo review. That said, the third-party beneficiary doctrine has no applicability here.

Whether or not plaintiff's claims are subject to arbitration as to *all* of the defendants, even those who are not parties to the employment contract, is governed by the arbitration provision itself. This was made clear in *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559 (6th Cir. 2008). There, an optometrist, who was a member of the National Guard, had an employment contract with Louisville Optometric Centers III ("LOC") under which the optometrist agreed to "resolve any controversy, dispute or disagreement arising out of or relating to [the] Agreement" through negotiation or, if that proved unsuccessful, through arbitration. *Id.* at 560 (alteration in original). The optometrist brought suit against LOC, alleging employment discrimination based on his military service and age. He also named as defendants LOC's primary optometrist, its manager, and its management company, none of whom were parties to the employment contract. On defendants' motion, the district court stayed all proceedings and ordered arbitration. Noting that the employment contract contained an integration clause, the court of appeals affirmed, concluding that anything pertaining to the employment relationship

10

was subject to arbitration. It also concluded that "[t]he district court correctly held that the claims against [the non-parties to the employment contract] were subject to the arbitration clause of the employment agreement . . . [because] [t]hese parties were employers within the meaning of USERRA, 38 U.S.C. § 4303(4)(A), and the claims against them arose in their capacities as managers of LOC offices." *Id.* at 561.

The same reasoning applies here. Any objection based on a third-party beneficiary argument is overruled.

## B.    Scope of Arbitration

Plaintiff's next objection[6] relates to the R&R's conclusion that the parties agreed to arbitrate arbitrability *and* that all but claim six and part of claim twelve at least arguably fall within the intended scope of the arbitration clause.

Plaintiff's employment contract provided that, during its term, he "may be removed, suspended or demoted for cause pursuant to ORC 5126.23." (Doc. No. 57-1 at 430.) It further provides:

> . . . Any dispute, claim or cause of action arising out of such removal, suspension or demotion shall be submitted to binding arbitration under the then existing rules of the American Arbitration Association.
>
> * * *
>
> The question of arbitrability must be raised by either party before the arbitrator hears the merits of the dispute. If a question of arbitrability is raised, the arbitrator may either rule on the issue or reserve ruling and hear the merits of the dispute before issuing a ruling on this question.

(*Id*. at 431-32.)

---

[6] The bulk of plaintiff's argument is repeated verbatim from his opposition to the underlying motion and, therefore, need not be addressed by this Court as a proper "objection."

Plaintiff asserts that the arbitration provision is "not a broadly worded provision that provides 'for any controversy or claim arising out of or related to this Agreement or the breach thereof' to be arbitrated." (Objections at 1963 [repeating the argument in Doc. No. 102 at 1229].) He asserts that the provision is "narrowly crafted . . . to replace only the statutorily dictated administrative procedures for a . . . management employee[,] . . . not to replace the courts as venues for USERRA, FMLA, § 1983 claims, constitutional claims, breach of contract claims, or other types of claims." (*Id*. at 1964 [repeating the argument in Doc. No. 102 at 1229-30].) He argues that "such claims do not <u>arise out of</u> any removal or suspension[,] [but rather] <u>arise out of</u> the violation of the plaintiff's constitutional rights." (*Id.* at 1964, underlining in original.) Nor, he argues, were "the retaliation claims brought under USERRA, the FMLA, and Section 1983" contemplated by the parties to be "encompassed within the narrow scope of the arbitration clause at issue and do not arise out of the removal." (*Id*. at 1964-65.)[7]

Plaintiff is simply wrong in this regard. The contract provision broadly requires arbitration for "*[a]ny* dispute, claim or cause of action *arising out of* such removal, suspension or demotion[.]" (Doc. No. 57-1 at 431, emphases added.) Here, all but the two claims excluded by the R&R, even the statutory claims and the constitutional claims raised thereunder, at least arguably *arise out of* the defendants' "removal" of plaintiff. Plaintiff mischaracterizes the source of his claims–his claims arose because he was removed, and that removal *might* have violated statutory or constitutional rights. "Where the arbitration clause is broad, only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators."

---

[7] Plaintiff also asserts that, if the employer contemplated that "[r]etaliation for protected free speech and petition for redress of grievances" would be encompassed by the arbitration clause, then the clause "should be held unconscionable." (Objections at 1965.) This argument need not be addressed because it was never raised before the magistrate judge.

*Highlands Wellmont Health Network Inc. v. John Deere Health Plan Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (citations and quotes omitted)).

Plaintiff argues that "[t]he question is not whether [his] federal and state claims generally concern the subject of the employment agreement, but whether those claims are wrongs independent of the breach of the employment agreement." (Objections at 1965.)[8] Plaintiff's statement of the law is correct, as the Sixth Circuit has stated: "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003), cited favorably by *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x 482, 487-88

---

[8] In making this argument, plaintiff relies upon *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292 (9th Cir. 1994). Aside from the fact that Ninth Circuit law is not controlling in the Sixth Circuit, the case is inapplicable and clearly distinguishable. In *Tracer Research*, the two parties had entered into a licensing agreement under which defendant NESCO was licensed to use a chemical tracer process developed and marketed by Tracer Research. The licensing agreement contained a provision that "[i]n the event any controversy or claim arising out of this Agreement cannot be settled by the parties [ ], such controversy or claim shall be settled by arbitration." 42 F.3d at 1295 (alterations in original). NESCO also signed a confidentiality and nondisclosure agreement. After a couple years, the parties terminated the licensing agreement, but NESCO allegedly continued to use the process. Tracer Research sued, seeking damages and injunctive relief, *inter alia*, for trademark infringement and misappropriation of trade secrets. The district court issued a preliminary injunction and, over Tracer Research's objections, referred the entire matter to arbitration. Subsequently, based on the outcome of the arbitration, the district court dissolved the injunction. The court of appeals, finding it had jurisdiction, reversed and remanded. It concluded that the trade secrets claims were not arbitrable under the clause in the licensing agreement for arbitration of claims "arising out of" the agreement, since a misappropriation claim was a tort claim that was independent of any breach of the licensing and nondisclosure agreements. In so ruling, the court noted that NESCO was not arguing that the licensing agreement gave it the right to continue using Tracer's trade secrets, but, rather, that Tracer had no protectable trade secrets.

By contrast, in the instant case, all claims but the two already identified do more than just "generally concern the subject of the employment agreement[ ]" (Objections at 1965); rather, the claims, at least *arguably*, "aris[e] out of [plaintiff's] removal[.]" (Doc. No. 57-1 at 431.) The parties contractually agreed that "the resolution of any [such] matter regarding . . . removal[ ]" would be resolved through arbitration, and, at the very least, the arbitrator must be the one to decide whether these matters are arbitrable. (*Id.* at 431.)

(6th Cir. 2008) ("[t]he key issue in [plaintiff's] suit is whether she was paid less and denied work because of illegal discrimination[,]" a determination that "will require reference to the Partnership Agreement[ ]" that contained the arbitration provision).

The gravamen of most of plaintiff's causes of action (with the exception of the sixth and part of the twelfth) is that defendants wrongfully terminated him, but claimed to have had cause for doing so – cause that plaintiff alleges was a mere pretext for discrimination and for violation of rights secured to him by the Constitution and various federal and state statutes. Thus, as in *Panepucci*, "[t]he key issue . . . is whether [he] was [terminated] because of illegal discrimination[ ]" and/or other unconstitutional practices. 281 F. App'x at 487.

This Court's role in the face of a motion to compel arbitration is to determine whether the claims arguably fall within the arbitration provision in the employment contract. If they do, since the parties also agreed to arbitrate arbitrability, under the policy favoring arbitration, it is the arbitrator who should decide which of the claims are actually arbitrable under the contract. Here, if the Court were to attempt to resolve plaintiff's statutory claims independent of arbitration, it would be confronted with the question of whether defendants properly and legitimately terminated plaintiff's employment, a matter that "aris[es] out of . . . removal, suspension or demotion[.]" (Doc. No. 57-1 at 431.) Plaintiff's claims, therefore, fall within that provision of the employment contract.

## CONCLUSION

For the reasons set forth above, the Court concludes that plaintiff's statutory and constitutional challenges to his termination are arguably subject to arbitration because they must be resolved with reference to the employment relationship set forth in the employment contract.

In so concluding, the Court, as did the R&R, emphasizes that this ruling is not intended as a suggestion to the arbitrator as to what the scope or outcome of the arbitration should be.

Defendants' motion to compel arbitration and to stay all proceedings in this Court until that arbitration is concluded is **GRANTED**. The Clerk is directed to mark the docket as "stayed." Counsel for the parties are directed to keep the Court apprised of the status of the arbitration.

**IT IS SO ORDERED**.

Dated: July 3, 2014

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

15